CHARLES REICHERT, APPELLANT, V. PAUL KELLER ET AL., APPELLEES.

FILED FEBRUARY 23, 1899.     No. 8762.

Right of Way: ABANDONMENT: TRESPASS. The construction of a fenced lane across the right of way of a railroad company and beneath a bridge carrying the tracks, so as to provide a subway for the passage of live stock, is not so foreign to the purposes of a grant of land for railroad purposes that the grantor can complain thereof as an abandonment of the right of way granted or as a trespass upon his reversionary rights.

APPEAL from the district court of Saunders county. Heard below before SEDGWICK, J. *Affirmed.*

*C. Hollenbeck,* for appellant.

*J. E. Frick, W. J. Courtright,* and *J. B. Sheean, contra.*

IRVINE, C.

The petition in this case against Paul Keller and the Fremont, Elkhorn & Missouri Valley Railroad Company states a complaint against the defendants for obstructing a drainage ditch of plaintiff and for also obstructing a passage-way for live stock across the right of way of the railroad company. The answers, admitting certain facts, amounted to general denials of the wrongful acts charged. The object of the proceeding was to restrain the defendants from maintaining the obstructions. There was a general finding for the defendants, the case was dismissed, and the plaintiff appeals.

While on some points the evidence was conflicting, the facts, as determined from the uncontradicted evidence, and by the court's finding on controverted points, are as follows: Reichert owns a tract of land across which passes, from east to west, the line of the railroad. The company's right is derived from a deed made by Reichert in 1887, which, it is conceded, did not pass the fee, but only what is usually, but inaccurately, styled an easement—more technically, a right of way. The strip granted for that purpose is one hundred feet wide. A few feet west of the eastern boundary of Reichert's land he had, prior to the construction of the railroad, made a ditch for drainage purposes, running north and south, and apparently about two feet wide at the bottom and not more than four at the surface. In constructing the railroad the track was carried upon a bridge across this ditch. The bridge is about twelve feet long and its center is almost over the ditch. Keller owns land on each side of the railroad and immediately adjoining Reichert

to the east. To afford Keller a passage or runway for his live stock across the right of way of the railroad the company constructed for him two fences, parallel and six feet and one-half apart. These formed a lane beginning on Keller's land where it cornered upon that of Reichert, then extending northwesterly until it reached the bridge, passing under the bridge adjacent to its eastern end and to the east of the ditch, and thence turning northeasterly so as to debouch again on Keller's land north of the right of way, and where it on that side meets Reichert's. Thus both ends of the lane are entirely opposite land occupied by the railroad and not within Reichert's grant, but the greater part of its course is over that part of the right of way granted by Reichert, and it extends, where it passes under the bridge, as much as nine feet upon that land. A substantially similar state of affairs had existed for about four years prior to the bringing of this suit. It is charged that the defendants had obstructed the flow of water in the ditch. The proof shows that Keller, to afford a firmer pathway for his cattle, had placed under the bridge a quantity of bricks, but while the evidence is conflicting, there is much to show that this was to the east of the ditch and that, in any event, the ditch was lower under the bridge than either north or south thereof, and that the flow of water was in no way impeded. We take it from the briefs that the appellant now concedes that the finding adverse to him is sustained by the evidence on this point.

The charge that the defendants had interfered with a passage-way for plaintiff's stock has absolutely no support in the evidence. The proof shows that there remains to the west of the ditch a sufficient passage-way under the bridge to permit of a runway on that side sufficient for all such purposes, and at least as wide as Keller's. It also appears that the railroad company offered to construct such a runway for plaintiff, and, if preferred, to box in or tile the ditch so as to give him all the space

not occupied by Keller's lane for a runway.  This plain-
tiff refused, giving as a reason that he had no use for a
passage-way.  This proof is not contradicted.  It is, how-
ever, sought to impeach the decree of the district court
on the ground that the company's right is only to a way
for railroad purposes; that, subject to that use, the ex-
clusive dominion over the land granted by Reichert re-
mains in him.  It is then argued that a runway for
Keller's stock is not within the purposes of the grant,
and its construction is a trespass upon the reserved
rights of Reichert.  It is useless on this question to enter
upon an exhaustive discussion of the privileges of rail-
road companies under similar grants.  The grant cer-
tainly passed the exclusive right to the use of the land
for all purposes necessary or reasonably convenient for
the proper construction and operation of a railroad.  A
subway for stock, to permit its free passage from one
side of the tracks to the other, is, we think, within the
scope of the company's rights.  We might take notice of
the fact, even had it not been proved, that such subways
conduce to safe and convenient operation of the railroad,
by avoiding the necessity of crossings at grade.  It is
true that it has been held that passage-ways for the
passage of unattended live stock are not within the stat-
ute requiring railroads to provide farm crossings.
(*Omaha & R. V. R. Co. v. Severin*, 30 Neb. 318.)  But that
is immaterial.  Crossings whereby the farmer may drive
his stock from one side to the other are within the stat-
ute; and if the railroad company can provide a free and
safe subway, it may avoid the dangers attendant upon
a grade crossing, or at least decrease its use and conse-
quent dangers.  Thus both railroad company and the
public are protected from dangers incidental to railroad
operation, and a device which serves such a purpose is
certainly not foreign to the purposes for which the land
was acquired.  Such a structure is as much a part of the
construction of the railroad line as a cattle-guard, or
even a highway crossing.  It is quite certain that Reich-

ert suffers no damage or even inconvenience by the structure complained of. He relies on a purely technical right derived· from real estate conveyancing, and which, if it exists, must be because of so narrow a construction of a grant in favor of the grantor, and against recognized principles of construction, as would lead, if logically carried out, to forbidding a railroad company to do more than to build its tracks and run its trains, and which would thereby forbid many of the most necessary precautions and public conveniences expected of well regulated railroads. The district court properly refused the injunction.

AFFIRMED.